**No. 25-2131**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROBERT BRACALENTE; BORIS GDALEVICH, individually and as representatives of a class of similarly situated persons, on behalf of the Cisco Systems, Inc. 401(k) Plan,

*Plaintiffs-Appellants*,

v.

CISCO SYSTEMS, INC.

*Defendants-Appellees.*

On Appeal from an Order of the United States District Court
for the Northern District of California
No. 5:22-cv-04417 (Hon. Edward J. Davila)

## OPENING BRIEF OF PLAINTIFF-APPELLANT

JAMES C. SHAH
MILLER SHAH LLP
456 Montgomery Street
Suite 1900
San Francisco, CA 94104
jcshah@millershah.com

ALEC J. BERIN
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
ajberin@millershah.com

JAMES E. MILLER
LAURIE RUBINOW
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
jemiller@millershah.com
lrubinow@millershah.com

May 12, 2025                          *Counsel for Plaintiffs-Appellants*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Plaintiffs-Appellants ("Appellants") certify that Appellants are individuals and, other than as may be disclosed by Defendants-Appellees ("Appellees"), they are not aware of any party to this appeal that is a subsidiary or affiliate of a publicly-owned corporation, nor of any publicly-owned corporation that has a financial interest in the outcome of this appeal.

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ........................................................................ i

TABLE OF AUTHORITIES ........................................................................ v

ORAL ARGUMENT REQUESTED ........................................................... xii

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT .............................................................. 6

STATUTORY AUTHORITIES ................................................................... 6

ISSUES PRESENTED ................................................................................. 6

STATEMENT OF THE CASE ..................................................................... 7

I.      FACTUAL BACKGROUND ............................................................. 7

        A.      Cisco sponsors and is a fiduciary of the Plan ....................... 7

        B.      Cisco retained the BlackRock TDFs in the Plan despite substantial
                indications the investments were unsuitable ....................... 8

                1.      No TDF is passively managed ............................... 10

                2.      The Committee should have evaluated the BlackRock TDFs
                        consistent with IPS guidelines for active funds ..... 11

                3.      The Committee neglected peer evaluation of the BlackRock
                        TDFs .................................................................... 13

                        i.      The S&P Indices ....................................... 14

                        ii.     The Dynamic TDFs ................................... 15

                        iii.    The Comparator TDFs .............................. 16

ii

## TABLE OF CONTENTS
### (Continued)

C. Procedural History ................................................................ 19

II. STATUTORY BACKGROUND ................................................ 21

    A. ERISA's Fiduciary Duties ................................................ 21

    B. Pleading Investment-Related Breaches Under ERISA ..................... 23

SUMMARY OF THE ARGUMENT ................................................ 28

STANDARD OF REVIEW ................................................ 31

ARGUMENT ................................................ 31

I. THE DISTRICT COURT ERRED BY FAILING TO APPLY A HOLISTIC PLAUSIBILITY STANDARD ................................................ 31

    A. The District Court failed to appropriately consider Appellants' process allegations ................................................ 32

    B. The District court failed to appropriately consider Appellants' investment allegations ................................................ 38

        1. Underperformance allegations may support an inference of a deficient process ................................................ 38

        2. The District Court ignored Appellants' well-pled allegations regarding the aptness of their comparators ................................................ 42

II. THE DISTRICT COURT ERRED BY APPLYING AN INAPPROPRIATE BENCHMARK REQUIREMENT ................................................ 47

    A. Application of a dispositive benchmark requirement at the pleadings stage abrogates ERISA's duty of prudence ................................................ 47

    B. The benchmark requirement is inconsistent with the applicable context-specific inquiry ................................................ 51

**TABLE OF CONTENTS**
**(Continued)**

C.   The District Court's application of the benchmark requirement would immunize fiduciaries ........................................................... 53

D.   The District Court's benchmark analysis was premature and constituted impermissible factfinding ................................................. 55

III.   THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CO-FIDUCIARY MONITORING CLAIM ........................................................ 57

CONCLUSION ..................................................................................... 58

CERTIFICATE OF COMPLIANCE ......................................................... I

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006)................................................................49

*Armstrong v. LaSalle Bank Nat'l Assoc.*,
  446 F.3d 728 (7th Cir. 2006) ............................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................ 4, 30, 32

*Bafford v. Northrop Grumman Corp.*,
  994 F.3d 1020 (9th Cir. 2021) ..........................................................31

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
  2021 WL 105619 (N.D. Cal. Jan. 12, 2021)......................................36

*Becker v. Wells Fargo & Co.*,
  2021 WL 1909632 (D. Minn. May 12, 2021)......................................27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................ 4, 30, 32

*Bouvy v. Analog Devices, Inc.*,
  2020 WL 3448385 (S.D. Cal. June 24, 2020) ............................. 24, 47

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ....................................................*Passim*

*Brookins v. Ne. Univ.*,
  2024 WL 1659507 (D. Mass. Apr. 17, 2024)......................................27

*Brotherston v. Putnam Invs., LLC*,
  907 F.3d 17 (1st Cir. 2018)................................................................56

*California Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
  259 F.3d 1036 (9th Cir. 2001) ..........................................................51

## TABLE OF AUTHORITIES
### (Continued)

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ......................................................... 24, 40

*Daugherty v. Univ. of Chicago*,
   2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ...................................... 39

*Davis v. Salesforce.com, Inc.*,
   2022 WL 1055557 (9th Cir. Apr. 8, 2022) ........................... 28, 41, 56

*Davis v. Salesforce.com, Inc.*,
   2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ..................................... 28

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ..................................................... *Passim*

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ............................................................. 2

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982) ............................................................. 1

*Donovan v. Mazzola*,
   716 F.2d 1226 (9th Cir. 1983) ........................................................ 25

*Dover v. Yanfeng US Auto. Interior Sys. I LLC*,
   563 F. Supp. 3d 678 (E.D. Mich. 2021) ........................................... 43

*Falberg v. Goldman Sachs Grp.*,
   2022 WL 4280634 (S.D.N.Y. Sept. 14, 2022) ................................. 37

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   2019 WL 4466714 (S.D.N.Y. Sep. 18, 2019) .................................. 37

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .................................................................. *Passim*

*Fink v. Nat'l Sav. & Tr. Co.*,
   772 F.2d 951 (D.C. Cir. 1985) ........................................................ 24

**TABLE OF AUTHORITIES**
**(Continued)**

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ................................................2

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ....................................... 1, 21

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ..............................................55

*Hughes v. Nw. Univ.*,
    595 U.S. 170 (2022)...................................................*Passim*

*Hughes v. Nw. Univ.*,
    63 F.4th 615 (7th Cir. 2023) ....................................... 37, 42

*In re LinkedIn ERISA Litig.*,
    2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .......................... 27, 46

*In re MedStar ERISA Litig.*,
    2021 WL 391701 (D. Md. Feb. 4, 2021) ............................57

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...........................................48

*In re: Prime Healthcare ERISA Litig.*,
    2021 WL 3076649 (C.D. Cal. July 16, 2021)..........................27

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)......................................................22

*Johnson v. Parker-Hannifin Corp.*,
    122 F.4th 205 (6th Cir. 2024) .....................................*Passim*

*Jones v. DISH Network Corp.*,
    2023 WL 7458377 (D. Colo. Nov. 6, 2023)............................*Passim*

*Kirschbaum v. Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) ............................................48

## TABLE OF AUTHORITIES
### (Continued)

*Kistler v. Stanley Black & Decker*,
    2024 WL 3292543 (D. Conn. July 3, 2024) ..................................... 37, 41, 44, 45

*Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*,
    2022 WL 17224708 (C.D. Cal. Sept. 27, 2022) .................................................52

*Lauderdale v. NFP Ret., Inc.*,
    2022 WL 17260510 (C.D. Cal. Nov. 17, 2022) .................................................35

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)...............................................................................................22

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ..................................................................... 26, 30

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) ......................................................................... 41, 51

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ................................................................................37

*Mattson v. Milliman, Inc.*,
    2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) .............................................56

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) .....................................................................*Passim*

*Meiners v. Wells Fargo & Co.*,
    2017 WL 2303968 (D. Minn. May 25, 2017)....................................................26

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)...............................................................................................21

*Miller v. Astellas US LLC*,
    2021 WL 1387948 (N.D. Ill. Apr. 13, 2021).....................................................56

*Mills v. Molina Healthcare, Inc.*,
    2024 WL 1216711 (C.D. Cal. Mar. 20, 2024)....................................................56

# TABLE OF AUTHORITIES
## (Continued)

*Moler v. Univ. of Md. Med. Sys.*,
  2022 WL 2756290 (D. Md. July 13, 2022) ......................................47

*NLRB v. Amax Coal Co.*,
  453 U.S. 322 (1981).........................................................................23

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.*,
  *712* F.3d 705 (2d Cir. 2013)............................................. 23, 24, 25, 40

*Pilkington PLC v. Perelman*,
  72 F.3d 1396 (9th Cir. 1995) ..........................................................22

*Ryan S. v. UnitedHealth Grp., Inc.*,
  98 F.4th 965 (9th Cir. 2024) ...........................................................31

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021) ......................................................... 41, 55

*Sec'y of Lab. v. Fitzsimmons*,
  805 F.2d 682 (7th Cir. 1986) ..........................................................23

*Sellers v. Trs. of College*,
  647 F. Supp. 3d 14 (D. Mass. 2022) ......................................... 25, 35

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)...........................................................................1

*Sheppard v. David Evans & Assocs.*,
  694 F.3d 1045 (9th Cir. 2012) ........................................................31

*Short v. Brown Univ.*,
  320 F. Supp. 3d 363 (D.R.I. 2018) ..................................................57

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) .........................................................19

*Snyder v. UnitedHealth Grp., Inc.*,
  2021 WL 5745852 (D. Minn. Dec. 2, 2021)......................................43

## TABLE OF AUTHORITIES
### (Continued)

*Sweda v. Univ. of Pa.*,
  923 F.3d 320 (3d Cir. 2019)..................................................................... 1, 25, 28

*Tatum v. RJR Pen. Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ...............................................................48

*Terraza v. Safeway, Inc.*,
  241 F. Supp. 3d 1057 (N.D. Cal. 2017) ...............................................24

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015)...................................................................*Passim*

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) ...............................................................22

*Trauernicht v. Genworth Fin. Inc.*,
  2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ...................................... 33, 37, 45

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)..............................................................................22

*Wacker v. JP Morgan Chase & Co.*,
  678 F. App'x 27 (2d Cir. 2017) ...........................................................57

*Waldner v. Natixis Inv. Managers, L.P.*,
  2021 WL 9038411 (D. Mass. Dec. 20, 2021)......................................47

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) ...............................................56

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...............................................................31

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ......................................................... 22, 33

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
  2024 WL 1135773 (C.D. Cal. Feb. 18, 2024) .....................................27

## TABLE OF AUTHORITIES
### (Continued)

**Statutes**

28 U.S.C. § 1291 ........................................................................6

28 U.S.C. § 1331 ........................................................................6

28 U.S.C. § 1332(e)(1) ...............................................................6

29 U.S.C. § 1001 ................................................................ xii, 1

29 U.S.C. § 1104(a)(1)(A)(i) ....................................................22

29 U.S.C. § 1104(a)(1)(B) .................................................. 6, 21

29 U.S.C. § 1105(a) ..................................................................57

29 U.S.C. § 1109(a) ....................................................................1

29 U.S.C. § 1132(a)(2) ................................................................1

**Rules**

Fed. R. App. P. 4(a) ................................................................. 6

Fed. R. App. P. 26.1 ................................................................. i

Fed. R. Civ. P. 12(b) ................................................... 4, 56, 57

**Regulations**

29 C.F.R. § 2550.404a-1(b)(1)(i) .............................................23

**Other Authorities**

80 Fed. Reg. 65135 (Oct. 26, 2015) ........................................46

## ORAL ARGUMENT REQUESTED

Appellants hereby request oral argument and submit that argument would assist the Court in addressing the important issues raised herein.  This appeal involves complex issues related to the applicable pleading standard in actions under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

# INTRODUCTION

ERISA[1] requires the fiduciaries of a retirement plan to act prudently and loyally in managing the plan's assets. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 411–12 (2014). A fiduciary who breaches ERISA's fiduciary duties "shall be personally liable to make good to such plan" any losses caused by a breach. 29 U.S.C. § 1109(a). ERISA confers upon plan participants a private right of action to obtain relief on behalf of a plan for such breaches. 29 U.S.C. § 1132(a)(2).

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). Considering ERISA's protective purposes, the statute's fiduciary duties are recognized as "the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). At the pleadings stage, "[t]hese considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 332 (3d

---

[1]"ERISA" refers to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

Cir. 2019) (same).

When defendants seek dismissal of ERISA breach of fiduciary duty claims, the relevant inquiry is whether the factual allegations, considered "holistically," support a plausible inference that a breach occurred. *Braden*, 588 F.3d at 598. For this reason, the Supreme Court has rejected a "presumption of prudence" that would require plaintiffs to overcome a presumption that fiduciaries acted consistently with ERISA when challenging certain decisions. *See Dudenhoeffer*, 573 U.S. at 417, 425. The Supreme Court instead made clear that "the appropriate inquiry will necessarily be context specific." *Id.*[2] Recently, the Supreme Court reaffirmed the "context-specific inquiry" required in assessing the sufficiency of an ERISA complaint. *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022) (rejecting "categorical rule[s]" of ERISA pleading for imprudent investment claims).[3]

In this case, Appellants claim the fiduciaries of the Cisco Systems, Inc. 401(k) Plan ("Plan") failed to appropriately monitor the plan's investments and consequently retained imprudent funds in the plan. Specifically, plaintiff alleges

---

[2]Unless otherwise indicated, all internal citations, alterations, and quotation marks are omitted.

[3]In *Hughes*, the Supreme Court reversed the Seventh Circuit's decision in *Divane v. Nw. Univ.*, which applied a presumption that had taken hold in the Seventh Circuit immunizing fiduciaries from excessive investment fee claims if there is a "wide range" of investment options. *See* 953 F.3d 980, 992 (7th Cir. 2020) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)).

the Plan's fiduciary committee ("Committee") imprudently retained the BlackRock LifePath Index Target Date Funds ("BlackRock TDFs") throughout the relevant period despite objective warning signs demonstrating the BlackRock TDFs were unsuitable for the Plan.  The Committee's barebones "review" of the BlackRock TDFs did not satisfy the guidance of the Plan's own Investment Policy Statement ("IPS") and pleads a clear breach of the duty of prudence.

The District Court applied a standard of the same species as the discredited presumption of prudence (rejected in *Dudenhoeffer*) and "wide range" of investment options (rejected in *Hughes*) doctrines.  Specifically, Appellants allege Cisco breached its fiduciary duties by retaining the BlackRock TDFs despite outward indications that the funds' strategy was failing.  Although the operative complaint's ("Complaint") allegations included process deficiencies, violations of the Plan's IPS, and underperformance against the prevailing market index, reasonable alternative investments, and an investment suite offered by the same manager as the BlackRock TDFs that was designed to outperform the funds with no added risk, the District Court failed to analyze the Complaint under anything resembling the holistic plausibility standard.  Instead, the District Court essentially concluded Appellants did not state a claim because their allegations did not meet an inapplicable "meaningful benchmark" requirement articulated in *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018).  The court in *Meiners* itself,

3

however, recognized this applies only to breach of fiduciary duty claims in which the theory of breach is premised on excessive costs or underperformance alone. *See id.* at 822. Indeed, the Eighth Circuit in *Meiners* squared its holding with its prior decision in *Braden* and did not modify the holistic plausibility standard.[4]

Not only did the District Court eschew the required holistic plausibility analysis, it decided issues that plainly cannot be resolved on the pleadings. The court's task on a Rule 12(b)(6) motion is circumscribed. As part of the holistic review counseled by ERISA and well-established precedent, each aspect of a district court's review must assess the plausibility of the allegations considering their context. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The propriety of an investment selection for a retirement plan is complex and fact-intensive. As such, a trial court is not equipped to conclusively determine the applicability of benchmark without the benefit of evidence. Thus, it was error for the District Court to resolve issues around the credibility of Appellants' underperformance allegations.

---

[4]The rigid benchmark standard adopted by the District Court cannot be applied to cases in which process allegations are pled, as it collapses the "context-specific inquiry" required by the Supreme Court. *Hughes*, 595 U.S. at 173. Assessing whether claims are plausible considering the benchmark comparisons pled, of course, may be part of the holistic plausibility determination. But, in doing so, a court must credit well-pled factual allegations supporting the use of the benchmarks pled and then review underperformance or excessive cost allegations among the complaint's "allegations as a whole." *Id.* at 177.

Yet, even if the Court finds that Appellants must meet the benchmark requirement articulated in *Meiners*, reversal is still warranted, as the District Court's application of the standard articulated in *Meiners* also was erroneous. The District Court declined to consider allegations supporting the plausibility of the comparisons in favor of a nonsensical bright line dictating that benchmarks must have essentially the same strategy as a challenged investment. Indeed, the District Court ignored allegations supporting the comparisons alleged, including based on the Plan's own IPS and reasonable alternatives for a retirement plan as large as the Plan. Moreover, competing investment products necessarily employ different strategies such that no third-party comparator could survive the District Court's benchmark analysis. *See Dudenhoeffer*, 573 U.S. at 425. Like the presumption of prudence and the "wide range" of investment doctrines, this version of the benchmark requirement is a categorical pleading rule that short-circuits a fiduciary's duty under ERISA.

If the District Court had engaged in the "context-specific inquiry" and followed the pleading standard instructed by the Supreme Court and this Court, the District Court would have sustained Appellants' claims. *Hughes*, 595 U.S. at 173. Instead, its application of a dispositive benchmark requirement ignored myriad allegations setting forth qualitative and quantitative facts establishing that Cisco's retention of the Blackrock TDFs could not be the result of prudent monitoring.

5

Dismissal should be reversed.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions under ERISA.

On March 11, 2025, the District Court entered a final judgment.  ER_17.[5] Appellants noticed this appeal on March 26, 2025.  ER_15.  Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1291 and the appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a).

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.  *See* 9th Cir. R. 28-2.7.

## ISSUES PRESENTED

Whether the District Court erred in finding Appellants did not state a plausible claim that Cisco breached ERISA's duty of prudence by retaining the BlackRock TDFs in the Plan.

Whether the District Court erred in finding that Appellants did not state

---

[5]"ER_" refers to the pagination of the accompanying Excerpts of Record.

plausible claims that Cisco failed to monitor its co-fiduciaries with respect to the foregoing alleged breach.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

### A.    Cisco sponsors and is a fiduciary of the Plan

The Plan is a defined contribution retirement plan.  ER_30–31 ¶¶ 1–4.  This means "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).  Unlike with traditional defined benefit retirement plans, Plan participants bear the risk of investment underperformance.  ER_30 ¶ 2.

The Plan is one of the largest defined contribution plans in the country. ER_31 ¶ 4.  Appellants are former Cisco employees and participants in the Plan. ER_30 ¶ 1, ER_33 ¶ 9.  Appellants invested in the BlackRock TDFs, as well as other funds, through their Plan accounts.  *Id.*

Cisco sponsors the Plan sponsor and is a fiduciary of the Plan.  ER_31 ¶ 5, ER_33 ¶ 11.  Cisco appointed the Committee to administer the Plan on its behalf, and the members of the Committee are also fiduciaries of the Plan.  ER_32 ¶ 6,

ER_34 ¶ 12.[6]

### B. Cisco retained the BlackRock TDFs in the Plan despite substantial indications the investments were unsuitable

Cisco's responsibilities as a fiduciary include selecting and monitoring investments in the Plan. ER_31 ¶ 5. The Plan has offered the BlackRock TDFs, a suite of target date funds ("TDF(s)"), since 2011. ER_40 ¶ 31. TDFs are an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the investor's assumed retirement year approaches. ER_38 ¶ 26. All TDFs are inherently actively managed, because managers make changes to the funds' allocations to stocks, bonds, and cash over time. *Id.* These allocation shifts are referred to as a TDF's "glide path." *Id.*

TDF glide paths are managed either "to" or "through" retirement. A "to retirement" glide path generally assumes participants will withdraw their funds once they reach the presumed retirement age, or soon thereafter. ER_39 ¶ 27. The asset allocation of a "to retirement" TDF remains static once the retirement date is reached. *Id.* A "through retirement" glide path expects participants to remain invested after reaching retirement and gradually draw down their funds. *Id.* Accordingly, the terminal allocation (*i.e.*, the ending asset allocation) of a

---

[6]Cisco stipulated that it would be responsible for a judgment based on the conduct of the Committee and its members. ER_33 ¶ 11.

"through" TDF is not reached until a predetermined number of years after the target date for retirement. *Id.* A distinction in glide path approach is not a legitimate reason that TDFs following alternative approaches cannot be compared. *See id.* As discussed in greater detail below, because the Committee incorrectly treated the BlackRock TDFs as a passively managed investment and memorialized this misconception in the IPS, it critically failed to apply the IPS' directive to evaluate actively managed investments against peer investments in the case of the BlackRock TDFs. ER_38 ¶ 25, n.3.

The BlackRock TDFs suffered from persistent and substantial performance issues and routinely failed the evaluative criteria in the Plan's IPS, as well as commonplace criteria that were inappropriately omitted from the IPS, such that the BlackRock TDFs could not have supported an expectation of performance sufficient to justify their retention. ER_40 ¶ 31. Yet, Cisco designated the BlackRock TDFs as the Plan's Qualified Default Investment Alternative ("QDIA"), which meant that Plan participants who did not affirmatively direct their contributions were automatically invested in the BlackRock TDFs—thereby exacerbating the deleterious impact of the BlackRock TDFs on Plan assets. ER_42 ¶ 35. Approximately 23% of Plan assets were concentrated in the BlackRock TDFs by the end of 2020. ER_42 ¶ 36.

Cisco's retention of the BlackRock TDFs was the result of an imprudent

investment monitoring process. First, Cisco could have chosen from prudent alternative TDFs offered by competing providers but elected to retain the BlackRock TDFs instead, which deprived Plan participants of significant growth in their retirement assets. ER_41 ¶ 32. A weighing of the merits and features of available TDFs at the beginning of the Class Period, including their actual realized outcomes, would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were unsuitable for the Plan. ER_41 ¶ 33. Second, any objective evaluation of the BlackRock TDFs consistent with the Plan's *own* IPS (and basic tenets intrinsic to all appropriate investment policy statements) would have resulted in the selection of more appropriate TDFs. *Id.* Instead, Cisco appears to have chased the low fees charged by the BlackRock TDFs without any consideration of the value provided in exchange for such fees. *Id.* Cisco employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence) based upon basic economics and established investment theory. ER_42 ¶ 34.

## 1. No TDF is passively managed

The managers of "active" funds try to add value by outperforming a chosen segment of the market. ER_43 ¶ 37. When assessing an active fund manager's performance, fiduciaries and investment professionals scrutinize the impact of the manager's decisions. *Id.* The IPS also espouses this approach. *Id.* Conversely,

"passive" fund managers merely seek to mimic the performance of a chosen market index. *Id.*

TDFs are "funds of funds." ER_43 ¶ 38. While the component funds in a TDF portfolio may be actively or passively managed, or a combination of both, the asset allocation decisions made by the fund managers in setting and updating the glide path are active management decisions. *Id.* It is well-understood that all TDFs are inherently actively managed. *Id.* at n. 10 (citing articles). The failure to acknowledge this well-established and widely-understood principle rendered the Committee's evaluation of any TDF meaningless. *Id.* This misconception was codified in the IPS, which misidentified the BlackRock TDFs as passive and, consequently, did not contain any mechanism for the Committee to identify whether the BlackRock TDFs had an expectation of underperformance compared to alternatives. *Id.*

### 2. The Committee should have evaluated the BlackRock TDFs consistent with IPS guidelines for active funds

The Committee failed to appreciate the crucial distinction between a true passive investment and TDFs that involve active decisions, resulting in a misunderstanding of the BlackRock TDFs that rendered the Committee unable, by the guidelines of the IPS, to establish or conduct an effective monitoring process regarding the BlackRock TDFs. *Id.*

Operating under this misconception, the Committee only considered whether

11

the BlackRock TDFs tracked the returns of a custom benchmark, while minimizing deviations from those returns. ER_45 ¶ 40. The quarterly reports provided to the Committee only compared the performance of the BlackRock TDFs to the custom benchmark, a weighted mix of the benchmarks of the underlying portfolio funds—which, in essence, only provided the Committee with a tracking measurement *without any evaluation whatsoever of whether the strategy itself was sound and likely to offer a reasonable return accounting for risk. Id.* This custom benchmark is akin to looking in a mirror and provides no basis to conclude anything about the BlackRock TDFs' performance, or likelihood of positive risk-adjusted performance compared to available alternatives.[7] *Id.* The custom benchmark is essentially a clone of the BlackRock TDFs and, thus, incapable of providing a legitimate measure of performance. ER_47–48 ¶¶ 42–43. By mistaking the BlackRock TDFs for a passively managed product, the Committee neglected to compare the most important investment in the Plan to any meaningful benchmark or peers—*failing to apply its own enumerated evaluative criteria. Id.*

The Department of Labor's ("DOL") TDF guidance notes that plan fiduciaries are required to periodically review a plan's TDF offering, along with all other investment options, to ensure they should continue to be offered. *Id.* (citation

---

[7]The prospectuses for the BlackRock TDFs acknowledge this. ER_48 ¶ 44.

omitted).   It is impossible to confirm that a TDF remains suitable for participants without considering the realized outcomes of participants or the performance of TDFs compared to available alternatives with similar or less risk.  *Id.*  This violated the Plan's IPS and prevailing standards.

### 3.    The Committee neglected peer evaluation of the BlackRock TDFs

The IPS establishes that actively managed funds should be evaluated against a universe of similar funds.  ER_48 ¶ 44.  Despite the limitations of the custom benchmark, the Committee engaged in no regular analysis concerning the performance of the BlackRock TDFs relative to peer TDFs.  *Id.*  Therefore, the Committee was unable to recognize or track the BlackRock TDFs' consistent underperformance compared to available alternative TDFs over the rolling three- or five-year periods prescribed by the Plan's IPS (if applied to the BlackRock TDFs, as the IPS appropriately should have been).  *Id.*

The IPS instructs the Committee to apply heightened scrutiny to an investment that underperforms relative to its benchmark or peer group (but notably fails to identify a peer group for the BlackRock TDFs) and consider replacing the investment when future noncompliant performance is deemed likely.  ER_49 ¶ 45. Given that the BlackRock TDFs were "expected to match" their custom benchmark and the TDFs' returns were not compared to any peer funds at any time during the Class Period, ***it was not possible*** for the BlackRock TDFs to be earmarked for

further investigation, or indeed considered for removal, under the very parameters established in the IPS.  *Id.*

### i.    The S&P Indices

Prudent fiduciaries compare a TDF's risk and return characteristics to the TDF industry at large.  ER_50 ¶ 47.  This is consistent with the IPS' guidance to evaluate fund performance compared to a peer universe.  *Id.*  According to Morningstar, the S&P Target Date Indices ("S&P Indices") are the most common and appropriate benchmark used to approximate the performance of the TDF industry—and BlackRock itself agrees.  *Id.*  The S&P Indices represent "the opportunity set available in the U.S. universe of target date funds."  *Id.*   Since each of the TDFs in the S&P Indices seek to achieve the same objective (*i.e.*, preparing investors for retirement by a particular date), the S&P Indices represent an ideal evaluative tool for assessing the BlackRock TDFs.  *Id.*  In fact, Cisco's own participant disclosure notices, which are provided annually to Plan participants, provide the S&P Indices as benchmark for the BlackRock TDFs. ER_51 ¶ 48.

The BlackRock TDFs persistently underperformed the S&P Indices on a three- and five-year basis, ER_63–83 ¶¶ 69–78, an explicit red flag that, under the terms of the Plan's own IPS, should have resulted in the Committee reviewing and removing the BlackRock TDF.

*ii.*     *The Dynamic TDFs*

The Committee failed to compare the BlackRock TDFs to other available TDFs, including another suite offered by BlackRock that was expected to outperform the BlackRock TDFs with no added risk.  ER_50 ¶ 46.  These TDFs, the BlackRock LifePath Dynamic Funds ("Dynamic TDFs"),  have the same glide path and strategy as the BlackRock TDFs.  ER_50 ¶ 47.  The Dynamic TDFs were, at all pertinent times, expected to outperform the BlackRock TDFs by 50 to 100 basis points annually *with no additional risk*.  ER_51 ¶ 48.  From their inception through December 2023, the series exceeded the returns of the BlackRock TDFs by 53 basis points, on average.  *Id.*

The Committee failed to compare the BlackRock TDFs with the Dynamic TDFs, let alone consider replacing the BlackRock TDFs with its sister product that promised to deliver better retirement outcomes with no additional risk.  ER_52 ¶ 49.  Even if the Committee desired to retain BlackRock to manage its TDFs, and preferred the glide path and strategy of the BlackRock TDFs (though the Committee should have known they were inferior to available TDFs), there was a superior available investment alternative which compensated to a degree for the dramatic performance deficiencies of the BlackRock TDFs.  *Id.*  At a minimum, consistent with DOL guidance, it would be imprudent to retain an investment with a lower expected return for the same level of risk as a comparable alternative, and

15

the Committee should have explored the Dynamic TDFs.  *Id.*  BlackRock's promotion of the Dynamic TDFs involved press releases and published interviews and would have included notifying incumbent institutional investors in a BlackRock TDF product of the superior opportunity provided by the Dynamic TDFs.  *Id.*

Simply put, BlackRock informed investors that it was offering a product expected to outperform the BlackRock TDFs with the same objectives and glidepath *without* additional risk to investors, and the Committee failed to investigate the alternative.  ER_52 ¶ 50.  Then, real-time data indicated that BlackRock's thesis (*i.e.*, that the BlackRock TDFs would be outperformed by the alternative) was proven correct.  *Id.*  At no time did the Committee undertake any effort to assure itself that the BlackRock TDFs remained suitable for the Plan.  *Id.*

### iii.    The Comparator TDFs

Throughout the Class Period, appropriate alternative TDFs consistently and substantially outperformed the BlackRock TDFs, providing investors with substantially more capital appreciation.  ER_53 ¶ 51.  Critically, at the time of the Committee's decisions to retain the BlackRock TDFs, those alternatives—unlike the BlackRock TDFs—supported a reasonable expectation of return to justify selection for the Plan.  *Id.*  Accordingly, the Plan's investment in the BlackRock TDFs resulted in participants missing out on substantial retirement savings

growth. *Id.*

Prudent fiduciaries evaluate TDF returns against an appropriate index, a broad group of peer TDFs, and specific, readily investable alternatives, to ensure participants are benefiting from the current offering.  ER_53 ¶ 52.  It is incumbent on fiduciaries and a component of the standard of care to assess TDFs against readily available prudent alternatives, in addition to benchmarks, to ensure that participants are best served by the options available to them. *Id.*

The TDF market is top-heavy; by the end of 2021, the top six largest TDF series managed approximately three-quarters of all TDF assets.  ER_54 ¶ 54.  The largest six TDF series managed approximately three-quarters of all TDF assets.  ER_55 ¶ 55.  The Complaint pleads the underperformance of the BlackRock TDFs against a set of comparators (the "Comparator TDFs") drawn from this group, which represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced.   ER_55 ¶ 56.  The Comparator TDFs represent the exact kind of universe of similar funds against which the IPS requires non-passively managed investments such as the BlackRock TDFs to be evaluated.  *Id.*  And, the similarity in glide path construction and risk profiles for these Comparator TDFs make them apt comparators for the BlackRock TDFs. ER_56–59 ¶¶ 59–63.  The performance data available to the Committee demonstrated the unsuitability of the BlackRock TDFs relative to the Comparator

17

TDFs.  ER_63–83 ¶¶ 69–78.    *None of this data was reviewed or considered by the Committee at any of its meetings during the Class Period.  Id.*  Such data would have convinced a fiduciary following a prudent process (or the Plan's IPS) to investigate alternatives and replace the BlackRock TDFs.  *Id.*

Prevailing standards dictate that fiduciaries of large retirement plans meet quarterly.  Although the Committee met periodically, it failed to meet quarterly. ER_61 ¶ 65.  In the Committee's first meeting during the Class Period, the meeting minutes reflect *no discussion* of the performance of the BlackRock TDFs.  *Id.*  As of the same date, however, the BlackRock TDFs' returns pursuant to the criteria established by the IPS were decidedly worse than those of peer TDF suites, suggesting the need for heightened scrutiny under the direction of the IPS.  *Id.* Had the Committee appropriately evaluated the BlackRock TDFs against peers, the suite's marked underperformance should have been noted, discussed, and scrutinized.  *Id.*

Indeed, by the Second Quarter of 2016, the BlackRock TDFs trailed the corresponding S&P Indices on a three- and five-year basis, indicating the type of underperformance against a relevant peer universe that the IPS cautions should be grounds for dismissal of an actively managed investment.  ER_61 ¶ 66.  *This remained the same throughout the Class Period and, nevertheless, the Committee took no action.  Id.*

### C.    Procedural History

Appellants initiated this action on July 29, 2022.  ER_199.  Cisco moved to dismiss the initial complaint, which the District Court granted with leave to amend. Dkt. No. 74.  Citing *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022), the District Court concluded that Appellants' claims should be dismissed because they were "based solely on a fund's underperformance."  ER_192. Although Appellants pled the BlackRock TDFs performance concerns against four other TDFs, the District Court declined to address whether those comparators were apt—effectively holding that no matter how apt a comparator and no matter how substantial the alleged underperformance, performance allegations cannot state a claim.  ER_196.

Appellants filed an amended complaint on September 1, 2023.  Dkt. 78. Appellants filed the Second Amended Complaint ("SAC") to remove certain defendants pursuant to a stipulation between the parties.  ER_117, ER_120.  The SAC pleads, among other things, the structure of the TDF market and facts pertaining to the S&P Indices and Comparator TDFs to support underperformance allegations based on these comparisons.  ER_124–39 ¶¶ 24–51.  The SAC pleads process-based allegations concerning the Plan's IPS and Committee's meetings, relative to the Blackrock TDFs.  ER_123–24 ¶¶ 22–23, ER_141–64 ¶¶ 54–68.

19

The District Court dismissed the SAC without oral argument. ER_95. In its decision, the District Court effectively absolved the Committee based on the custom benchmark even though the SAC explained exactly why that benchmark was inappropriate under the Plan's IPS and failed to provide meaningful information regarding the performance of the BlackRock TDFs. ER_103–08. The District Court likewise rejected the comparisons in the SAC by finding that active TDFs could not be used as comparators for passive TDFs, even though the SAC explained why these comparators were appropriate. ER_108–11. The District Court then rejected Appellants' process allegations based upon the Committee's meeting minutes by effectively ignoring the deficiencies identified by Appellants and, instead read the Committee's meeting minutes in the light most favorable to Cisco. ER_111–14. In essence, the Court found that, because the Committee held some meetings, the process deficiencies apparent from the minutes should be ignored. *See id.* Finally, the District Court reiterated the troubling holding that no matter how dismal or persistent an investment's performance, performance allegations cannot support an inference of imprudence. ER_114–16.

Appellants filed the Third Amended Complaint ("TAC") on June 10, 2024. ER_30. In the TAC, Appellants supplemented the fulsome averments of the SAC with allegations that BlackRock itself offered a product that (a) had the same glide path as the BlackRock TDFs at issue, (b) explicitly involved no greater risk than

the BlackRock TDFs, and (c) explicitly contemplated a future expectation of higher returns, which the Committee utterly failed to consider.  ER_51–54.  The Court nevertheless dismissed the TAC through an atextual reading of the allegations and inferences in favor of Cisco.  ER_22–27.

## II.    STATUTORY BACKGROUND

ERISA is a "comprehensive and reticulated statute" that protects the interests of participants in employee benefit plans.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993).  ERISA codifies important responsibilities for those charged with managing and administering plans established under the statute and provides remedies for those whose benefits are compromised by violations of these responsibilities.

### A.    ERISA's Fiduciary Duties

ERISA establishes two primary duties that are "derived from the common law of trusts."  *Tibble*, 575 U.S. at 528.  "These duties are the highest known to the law."  *Howard*, 100 F.3d at 1488.

First, ERISA's duty of prudence requires individuals with control over plan assets to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity" would use.  29 U.S.C. § 1104(a)(1)(B).  Generally, "[a] court's task in evaluating a fiduciary's compliance with [the prudence] standard is to inquire whether the

21

individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004). ERISA's duty of prudence imposes upon fiduciaries "a continuing duty to monitor trust investments and remove imprudent ones." *Tibble*, 575 U.S. at 529. This requires a fiduciary to "systematically consider all the investments of the trust at regular intervals to ensure they are appropriate." *Id.*; *see also Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (fiduciaries must reevaluate a trust's investments "periodically as conditions change.").

Second, ERISA requires single-hearted loyalty. The statute's "command to fiduciaries is unequivocal: fiduciaries must act *solely in the interest* of the participants and beneficiaries and *for the exclusive purpose* of providing benefits to participants and their beneficiaries." *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995) (quoting 29 U.S.C. § 1104(a)(1)(A)(i)) (emphasis in original).

The "the crucible of congressional concern" motivating ERISA's enactment was "mismanagement of plan assets by plan administrators." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985). ERISA's duties are central to preventing this mismanagement. *See Varity Corp. v. Howe*, 516 U.S. 489, 511–12 (1996); *see also Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) ("Congress included various safeguards to preclude abuse and to completely secure

22

the rights and expectations brought into being by this landmark reform legislation.").  These fiduciary standards, accordingly, "must be enforced with uncompromising rigidity."  *Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 700–01 (7th Cir. 1986) (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329–34 (1981)).

**B.    Pleading Investment-Related Breaches Under ERISA**

Assessing the sufficiency of allegations that a fiduciary breached a duty under ERISA is a "context-specific inquiry" and, therefore, must involve consideration of the nature of the breach alleged.  *Hughes*, 595 U.S. at 173.  It is well established that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."  *Tibble*, 575 U.S. at 530.  Since "[a]n ERISA fiduciary's investment decisions also must account for changed circumstances," ignoring indicia of concern pertaining to an investment in a retirement plan may support a claim that fiduciaries breached their duty to prudently and loyally monitor plan investments.[8]  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley*

---

[8]Similarly, the DOL has issued clear regulatory guidance that a fiduciary must give "appropriate consideration to those facts and circumstances that . . . the fiduciary knows or should know are relevant to the particular investment or course of action involved."  29 C.F.R. § 2550.404a-1(b)(1)(i).  This guidance defines "appropriate consideration" to include "taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks[.]"  29 U.S.C. 2550.404a-1(b)(2)(i).

*Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 717 (2d Cir. 2013) (citing *Armstrong v. LaSalle Bank Nat'l Assoc.*, 446 F.3d 728, 734 (7th Cir. 2006)).

Plan participants are generally at an informational disadvantage relative to fiduciaries and, thus, the pleading standard may be satisfied by circumstantial allegations. *See St. Vincent*, 712 F.3d at 718 ("ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences, and so they must rely on circumstantial facts from which a court may reasonably infer from what is alleged that the process was flawed."). For this reason, a complaint need not "contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times because these facts will frequently be in the exclusive possession of the breaching fiduciary." *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *3 (S.D. Cal. June 24, 2020) (quoting *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017)); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

The circumstantial facts that may support a reasonable inference that a fiduciary breached a duty by retaining unsuitable investments include that "a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *St. Vincent*, 712 F.3d at 719; *see also Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 957 (D.C. Cir. 1985) ("[I]nvestigation of the merits of a particular investment is at the heart of the

prudent person standard."); *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir.

1983) (finding prudence standard requires courts to assess whether fiduciaries

"employed the appropriate methods to investigate the merits" of a plan

investment). These are not the only indicia of concern that would stir a reasonable

fiduciary to action, as the standard may be satisfied where the relevant factors

concerning an investment were such that "fiduciary in like circumstances would

have acted differently." *St. Vincent*, 712 F.3d at 720.

When a complaint alleges process deficiencies, the pleading standard

requires the application of a holistic analysis to determine whether the plaintiff has

plausibly alleged that a similarly-situated fiduciary would have acted differently.

*See Braden*, 588 F.3d at 598; *Sweda*, 923 F.3d at 332; *see also Sellers v. Trs. of*

*College*, 647 F. Supp. 3d 14, 29 (D. Mass. 2022) (the relevant inquiry is whether

fiduciary "took into account all relevant information").

Where plaintiffs plead a breach based on the underperformance or cost of an

investment alone, some courts have imposed a requirement that plaintiffs allege

underperformance or excessive costs by comparison to a benchmark. *See Meiners*,

898 F.3d at 822; *but see Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 216

(6th Cir. 2024) (holding a benchmark is not "always necessary in order to state a

claim."). When treated as dispositive, this analysis is at odds with the holistic

plausibility review the Supreme Court requires, and the courts that have recognized

25

a benchmark requirement have only done so in limited circumstances. *See id.*

The benchmark requirement emerged in *Meiners* from the district court's observation that an investment "cannot be analyzed in a vacuum," so a plaintiff "must provide some benchmark against which the [challenged] funds can meaningfully be compared." *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *2, *3 (D. Minn. May 25, 2017). This was a response to the shortcomings of the investment comparisons pled by the plaintiffs in that case. In *Meiners*, the plaintiff "only pled that one Vanguard fund, which he alleges is comparable, performed better than the Wells Fargo TDFs." 898 F.3d at 823. It is unsurprising that the court found such underperformance allegations insufficient where the plaintiff's theory of breach was entirely premised on underperformance when compared to a single alternative investment. *See Meiners*, 898 F3d at 824.

Two years after *Meiners*, the Eighth Circuit reaffirmed the benchmark requirement under the same circumstances. *See Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020). The Tenth Circuit has, similarly, adopted the requirement for imprudence claims premised only on a price disparity between investment options. *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023) (citing *Meiners*, 898 F.3d at 822). *Davis* and *Matney* do not purport to extend *Meiners* any further.

In a subsequent case against Wells Fargo, a court in the very same district as

26

*Meiners* denied a motion to dismiss claims based on allegations that exceeded the bare allegation of *post hac* underperformance compared to one unsupported alternative investment.[9]  *See Becker v. Wells Fargo & Co.*, 2021 WL 1909632, at *4–5 (D. Minn. May 12, 2021).  Similarly, other courts within the Ninth Circuit have declined to apply a dispositive benchmark requirement where the theory of breach is premised on more than underperformance or excessive costs alone.  *See, e.g.*, *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8 (N.D. Cal. Nov. 16, 2021); *In re: Prime Healthcare ERISA Litig.*, 2021 WL 3076649, at *6 (C.D. Cal. July 16, 2021) (citing cases); *cf. Zimmerman v. Cedars-Sinai Med. Ctr.*, 2024 WL 1135773, at *7 (C.D. Cal. Feb. 18, 2024) (declining to parse underperformance and other allegations and finding "[t]aken together," the plaintiff's allegations "are sufficient to permit the inference that Defendants acted imprudently in maintaining" the challenged investments).  Similarly, district courts around the country have found the question of the appropriate benchmark is appropriately resolved after discovery.  *See, e.g.*, *Brookins v. Ne. Univ.*, 2024 WL 1659507, at *4 (D. Mass. Apr. 17, 2024) (finding application of the benchmark requirement to the pleadings would ask court to "consider the merits substantively in a manner that

---

[9]The Complaint alleges underperformance based on comparators that any competent fiduciary would utilize (as confirmed by the Plan's own IPS) and did not involve hindsight analysis of any kind—the comparisons provided were those that prudent fiduciaries would have seen in real time.

27

would conflict with the [c]ourt's obligation to draw all reasonable inferences in favor of the plaintiff.").

The few district courts within this Circuit that have applied a benchmark requirement have done so in the context of cost- or underperformance-only theories of breach. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021). Indeed, in reversing dismissal of *Davis*, a panel of this Court observed that the fiduciaries' decision to retain "allegedly higher-cost target date funds over [less expensive] collective investment trusts . . . [is] a factual issue that cannot be resolved at the pleadings stage." *Davis v. Salesforce.com, Inc.* ("*Salesforce*"), 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022).

## SUMMARY OF THE ARGUMENT

I.     The District Court erred by failing to apply a holistic plausibility standard. *See Braden*, 588 F.3d at 598; *Sweda*, 923 F.3d at 332. Where, as here, a plaintiff's claim is supported by additional allegations beyond the performance of a challenged investment, "[t]he complaint should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible," but rather a court must consider the totality of allegations in the context of the entire pleading. *Braden*, 588 F.3d at 594. Since the Complaint alleges the Committee's deficient monitoring process and misunderstanding of key investment monitoring concepts, as well as allegations of persistent and substantial underperformance compared to a

prevailing TDF benchmark supported by the Plan's IPS, peer investments in comparisons also called for by the Plans' IPS, and another suite of TDFs marketed by BlackRock as likely to outperform the Plan's BlackRock TDFs with no added risk, Appellants have supported a plausible inference that Cisco's retention of the BlackRock TDFs was imprudent.

Moreover, to the extent a district court may appropriately consider the aptness of a plaintiff's comparator allegations, it must accept related allegations as true. The District Court, however, ignored allegations supporting the comparators alleged and instead held that a benchmark is insufficient unless it is essentially identical in strategy and risk to the challenged investment. The Complaint supports comparison of the BlackRock TDFs to the S&P Indices with allegations about the prevalence and use of that benchmark with respect to TDFs, and comparison of the BlackRock TDFs to the Comparator TDFs with allegations that the IPS and prevailing standards called for these comparisons, let alone BlackRock's own comparisons of the BlackRock TDFs and the Dynamic TDFs. Yet, the District Court brushed these allegations aside.

II. Instead of the holistic plausibility standard, the District Court erroneously applied a rigid benchmark requirement. By finding that Appellants did not adequately support the comparators against which they pled the underperformance of the BlackRock TDFs, the District Court unnecessarily and

29

improperly extended the "meaningful benchmark" to all but foreclose any duty of prudence claims involving comparative investments. This benchmark requirement, at most, applies in cases in which the plaintiffs' breach of fiduciary duty claim is premised on the performance of an investment alone, which is not the case here. *See Meiners*, 898 F.3d at 822; *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482–487 (8th Cir. 2020); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023). The District Court's extreme standard further applies a fiduciary-friendly gloss to the duty of prudence, effectively insulating all investment claims from challenges (except those involving share classes).

Finally, the District Court engaged in impermissible factfinding even though determination of whether a benchmark is sufficiently comparable to a challenged investment is fact-intensive and cannot be resolved under the *Iqbal* and *Twombly* plausibility standard. In short, the dispositive benchmark standard substitutes the process-focused, totality-of-the-circumstances inquiry ERISA and the Supreme Court require with a single-minded analysis of investment composition. *See Dudenhoeffer*, 573 U.S. at 417, 425; *Hughes*, 595 U.S. at 173.

III.    Since the District Court found Appellants' co-fiduciary monitoring claim is "derivative" of their principal breach of fiduciary duty claim, *see* ER_28, and Appellants plausibly state their principal claims, *see infra* Argument.I–II, dismissal of this claim is unwarranted.

## STANDARD OF REVIEW

This Court "review[s] de novo the grant of a motion to dismiss under Rule 12(b)(6)." *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 970 (9th Cir. 2024). A motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Instead, a complaint need only allege sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1048 (9th Cir. 2012). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025 (9th Cir. 2021).

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY FAILING TO APPLY A HOLISTIC PLAUSIBILITY STANDARD

The Supreme Court has repudiated the application of categorical rules that preclude breach of fiduciary duty claims where the totality of a complaint's allegations support an inference of breach. *See Dudenhoeffer*, 573 U.S. at 417, 425 (rejecting presumption of prudence). Such categorical rules are "inconsistent with the context-specific inquiry that ERISA requires and fail[] to take into account [the fiduciaries'] duty to monitor all plan investments and remove any imprudent ones."

31

*Hughes*, 595 U.S. at 173, 177.  Pleading rules of this kind "do[] not readily divide the plausible sheep from the meritless goats," which could be "better accomplished through careful, context-sensitive scrutiny of a complaint's allegations." *Dudenhoeffer*, 573 U.S. at 425.

The District Court's failure to consider Appellants' process allegations and allegations supporting their comparators was inconsistent with a holistic plausibility analysis and ran afoul of ERISA and the "context-specific inquiry that ERISA requires" for the same reasons set forth in *Hughes* in *Dudenhoeffer*.  A court must evaluate "the allegations as a whole" and "apply[] the pleading standard discussed in [*Ashcroft*] and [*Twombly*]."  *Hughes*, 595 U.S. at 177.  Had the District Court complied with the Supreme Court's instructions, it would have concluded Appellants sufficiently pled an imprudence claim.

## A.    The District Court failed to appropriately consider Appellants' process allegations

The District Court failed to appreciate that Appellants "do not base their claim on allegations of underperformance alone, but on allegations directly indicating that the Committee was ignoring relevant factors in monitoring the Plan's investments and that this monitoring deficiency prevented the Committee from replacing the [BlackRock TDFs] with a suitable alternative."  *Jones v. DISH Network Corp.*, 2023 WL 7458377, at *10 (D. Colo. Nov. 6, 2023).  The Complaint sets forth direct factual allegations detailing Cisco's shortcomings in

32

selecting and monitoring the BlackRock TDFs. The Committee failed to adhere to its own governing documents and did not meaningfully discuss the role or propriety of the BlackRock TDFs in the Plan. While underperformance alone may not always be sufficient to allege an ERISA fiduciary breach claim, the process-based factual allegations in the Complaint support a strong inference that Cisco failed to appropriately monitor the BlackRock TDFs for compliance with the Plan's IPS standards. *See Trauernicht v. Genworth Fin. Inc.*, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) (finding allegations concerning fiduciaries' actual process and actions may render underperformance a meaningful indicator of imprudence where such underperformance goes unnoticed and unaddressed).

A court's task in cases like this "is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment[.]" *Wright*, 360 F.3d at 1097. The "appropriate methods to investigate the merits" of the BlackRock TDFs were, in part, stated in the Plan's IPS, which required the Committee to compare the performance of Plan investments to a representative benchmark and, for actively managed investments, to appropriate peer groups over three- and five-year periods. *Id.*; ER_38 ¶ 25. Although the IPS was deficient insofar as it failed to require a comparison of the BlackRock TDFs to investable alternative TDFs, ER_37 at ¶¶ 23–24, the Plan's fiduciaries did not undertake even the required comparison of the

33

BlackRock TDFs to a true performance benchmark and peer groups, which would have demonstrated the unsuitability of the BlackRock TDFs for the Plan. ER_40–41 ¶¶ 31–33.

The Committee did not meet each quarter, as is customary for fiduciaries of large retirement plans, ER_61 ¶ 65, and when it met, it regularly did not discuss the performance of the BlackRock TDFs relative to the evaluative framework required under the IPS. ER_63–72 ¶¶ 69–71. Since the custom benchmark for the BlackRock TDFs is simply a tracking measurement, the Committee effectively failed to monitor the relative performance of the BlackRock TDFs at all.[10] ER_48 ¶ 44. In addition, the IPS provides that the Committee shall apply heightened scrutiny to an investment that underperforms its benchmark or peer group and consider replacing the investment as such time future noncompliance is deemed likely. ER_50 ¶ 46. Since IPS compliance was only assessed (if at all) based on the custom benchmark, it was impossible for the BlackRock TDFs to be earmarked for further investigation or considered for removal under the parameters established by the IPS. *Id.*

---

[10]The Committee's mistake in this regard was, at least in part, the result of its misunderstanding that the BlackRock TDFs are themselves actively managed and should therefore have been reviewed consistent with the IPS' process for active investments. ER_43–50 ¶¶ 37–46.

The Committee's meeting minutes reveal the deficiencies in its fiduciary process. Despite the BlackRock TDFs' failure to comply with the terms of the Plan's IPS (and other objective measures of underperformance), the meeting minutes routinely fail to even mention the returns of the BlackRock TDFs over the periods that the IPS indicates are relevant. ER_63–72 ¶¶ 69–71. In addition, the meeting minutes of the Committee from October 13, 2016 through August 24, 2022 do not reflect *a single instance* in which the Committee independently discussed any concerns with the BlackRock TDFs. ER_84 ¶ 79. The District Court entirely ignored these allegations, other than relying on a single set of meeting minutes from February 2017 to find that the Committee sufficiently reviewed the BlackRock TDFs. ER_112–13.

These allegations cement the inference that Cisco failed to follow the IPS' instruction to consider investments' comparative returns and peer-relative rankings. Courts across the country have found such allegations are sufficient to plead a breach of fiduciary duty. *See Jones*, 2023 WL 7458377, at *8 ("a failure to comply with an IPS is at least relevant to a fiduciary duty analysis."); *Lauderdale v. NFP Ret., Inc.*, 2022 WL 17260510, at *10 (C.D. Cal. Nov. 17, 2022) (fiduciaries "must comply with the plan's written statements of investment policy"); *Sellers v. Trustees of Coll.*, 647 F. Supp. 3d 14, 34-35 (D. Mass. 2022) (finding that plaintiffs stated claim where they plausibly alleged fiduciaries

breached their own investment policy); *Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 105619, at *3 (N.D. Cal. Jan. 12, 2021) (finding a "dispute as to whether Defendants complied with the IPS's direction" is "material to the Court's fiduciary duty analysis"). At a minimum, the Committee's failure to follow the procedures set forth in the Plan's IPS constitutes "a failure to review the Plan's investment decisions with the care, skill, prudence, and diligence that a prudent person . . . would use." *Jones*, 2023 WL 7458377, at *8 (quoting *Tibble*, 575 U.S. at 528).

Even when giving "due regard to the range of reasonable judgments a fiduciary may make," *Hughes*, at 595 U.S. at 177, courts should not assume decisions marred by fundamental misunderstandings and made without discernable deliberation fall within the range of reasonableness. Moreover, the Committee's occasional discussion of other aspects of the BlackRock TDFs does not absolve it of its responsibility to consider relative performance under the terms of the IPS. *See* ER_112–13; *cf. Hughes v. Nw. Univ.*, 63 F.4th 615, 629–30 (7th Cir. 2023) ("A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible—not which side's version is more probable."). The District Court's use of February 2017 minutes to explain away all the other allegations regarding the absence of analysis concerning the BlackRock TDFs in the meeting minutes over the entire relevant period inverted the pleading standard.

*Compare* ER_112–13 *with* ER_63–72, ER_84; *see also Kistler v. Stanley Black & Decker*, 2024 WL 3292543, at *15 (D. Conn. July 3, 2024) (although meeting minutes need not contain a verbatim transcript, "a fiduciary cannot absolutely shield itself from an accusation of imprudence by repeating in its minutes a generalized, boilerplate statement that it reviewed the performances of its investments"); *Trauernicht*, 2023 WL 5961651, at *11 ("[I]t is reasonable to infer that, because the minutes do not reflect that the Committee reviewed the performance of the BlackRock TDFs, the Committee failed to do so, which is a plausible allegation that Genworth breached its duty to monitor.").[11]

By ignoring well-pled allegations regarding Cisco's fiduciary process and looking to the outcome, the District Court impermissibly used hindsight, as it is the process that "ultimately matters, not the results." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *5 (S.D.N.Y. Sep. 18, 2019) (explaining the emphasis on "process" not "outcome").

---

[11]To excuse its construction of the meeting minutes submitted by Cisco, the District Court pointed to *Falberg v. Goldman Sachs Grp.*, but the decision it cites addressed a motion for summary judgment—not a motion to dismiss—and specifically involved parsing evidence after the development of a full record, including witness testimony and the disclosure of expert opinions. *See* 2022 WL 4280634, at *1, *12 (S.D.N.Y. Sept. 14, 2022). *Falberg* does not support a district court relying on extrinsic materials or inferences to find that fiduciary process was more robust than reflected in meeting minutes. *See id.*

The District Court's failure to meaningfully consider the Complaint's process allegations was reversible error.

## B. The District Court failed to appropriately consider Appellants' investment allegations

After setting aside Appellants' process allegations, the District Court effectively treated the claims as based on performance only. ER_114–15 (evaluating Appellants' performance allegations "absent the deficient process allegations"); *see also* ER_192–96. The District Court failed to recognize, however, Appellants' allegations that Cisco failed to appropriately monitor the BlackRock TDFs follow the same framework prescribed by the Plan's IPS. *See infra* Argument.I.B.1. Making matters worse, the District Court failed to address well-pled allegations rendering the comparators in Appellants' underperformance allegations plausible. *See infra* Argument.I.B.2.

### 1. Underperformance allegations may support an inference of a deficient process

Appellants' "underperformance allegations are part and parcel of direct allegations that Defendant[] ignored [its] own selected criteria for evaluating and monitoring the prudence of Plan investments." *Jones*, 2023 WL 7458377, at *7. The IPS establishes that actively managed funds should be evaluated against a universe of similar funds, ER_49 ¶ 45, and investments should be removed when they are unlikely to meet the stated performance objectives in the future. ER_38 ¶

38

25.  The Committee engaged in no regular analysis concerning the performance of the BlackRock TDFs relative to a TDF peer universe (either by composite or specific alternatives) at any time during the Class Period.  *Id.*  The returns data in the Complaint, which was available to Plan fiduciaries at the time of their alleged breaches, shows if the Committee had engaged in such analysis, it would have seen the consistent underperformance of the BlackRock TDFs at the vintage- and suite-level on a three- and five-year basis throughout the Class Period.  ER_49–50 ¶¶ 45–46, ER_59–80 ¶¶ 63–81.  Instead, because it only reviewed, at most, the custom benchmark for the BlackRock TDFs, the Committee had no means of determining whether the BlackRock TDFs were likely to meet their performance objectives going forward.

Simply put, Cisco failed to abide by its own investment monitoring criteria, causing Plan participants to miss out on substantial appreciation for their retirement savings.  *See Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at *8 (N.D. Ill. Sept. 22, 2017) (finding allegations that investment "underperformed for years compared to industry standards" and a prudent fiduciary "would have removed or replaced them" plausibly allege "a prudent fiduciary in like circumstances would have acted differently.").

Moreover, considering Appellants' informational disadvantage, they are permitted to rely on "circumstantial facts," including underperformance, from

39

which a court "may reasonably infer . . . that the process was flawed." *St. Vincent*, 712 F.3d at 718; *see also Concha*, 62 F.3d at 1503 (same).  Appellants allege the BlackRock TDFs' persistent underperformance against the TDF industry at large (as represented by the S&P Indices) as well as specific alternatives consistent with the Plan's IPS *and* an alternative managed by BlackRock that was marketed as performing better with no added risk.  *See supra* Statement of the Case.I.B.3. Cisco's failure to account for these contemporaneous indicia of the unsuitability of the BlackRock TDFs supports an inference that the funds were retained because of a deficient monitoring process.  *See id.*

The District Court, however, disregarded each of these allegations and "parsed the allegations" to deterministically dismiss the Complaint based on "criticisms . . . [that] only nibble around the edges."  *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 190 (3d Cir. 2024).  By imposing a rigid benchmark requirement, the District Court relieved itself of the responsibility to evaluate how the Complaint's allegations may support an inference of imprudence.

Beyond ignoring Appellants' well-pled allegations, the District Court went even further and credited Cisco's assertion that the Committee considered various factors when selecting the BlackRock TDFs, *see supra* Statement of the Case.I.C, even though such an inference finds no basis in the relevant facts, is contrary to inferences supported by the pleading, and violates the applicable pleading

standard. But, Cisco's preferred inferences "are not sufficient at the pleading stage to render [Appellants'] facially plausible allegations inadequate." *Davis v. Salesforce*, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022); *Sacerdote v. New York Univ.*, 9 F.4th 95, 108 (2d Cir. 2021) ("[W]e do not require an ERISA plaintiff to rule out every possible lawful explanation for the conduct he challenges."). "Where alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss." *Hughes*, 63 F.4th at 629–30.

Appellants recognize that the "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs." *Hughes*, 595 U.S. at 177. But Appellants' allegations make clear there were no such "difficult tradeoffs" concerning the BlackRock TDFs, which serially underperformed a recognized, leading market benchmark and peer TDFs against which the Plan's IPS required evaluation, as well as other comparators consistent with the Plan's IPS. Accordingly, Cisco's investment selection and monitoring process "cannot simply be deemed reasonable as a matter of law without further factual development." *Salesforce*, 2022 WL 1055557, at *2. To the contrary, because Appellants "alleged underperformance that is consistently observable across both metrics and time," she has "plausibly alleged that the BlackRock TDFs' underperformance should have at the very least captured the attention of a prudent fiduciary." *Kistler*, 2024 WL 3292543, at *12.

41

**2.    The District Court ignored Appellants' well-pled allegations regarding the aptness of their comparators**

Appellants allege the underperformance of the BlackRock TDFs compared to: (1) a recognized, prevailing benchmark for TDFs (the S&P Indices); (2) peer TDFs consistent with the Plan's IPS; and (3) another suite of TDFs marketed by BlackRock as likely to outperform the BlackRock TDFs without added risk. Rather than accept the Complaint's allegations regarding these comparisons, the District Court erroneously construed the facts in Cisco's favor.

First, with respect to the S&P Indices, the Complaint alleges the prevailing standard for performance evaluation using benchmarks and why the S&P Indices are an appropriate benchmark for TDFs.  The S&P Indices, which include a separately calculated index for each target date reflect the "opportunity set" in the TDF universe, ER_50 ¶ 47, and are recognized by Morningstar and others as the most widely used index by TDF providers. *Id.*  Highlighting the aptness of this comparison, *Cisco's own participant disclosures (provided annually to Plan participants) provide the S&P Indices as a benchmark for the BlackRock TDFs*. ER_51 ¶ 48.  The BlackRock TDFs persistently and substantially underperformed the S&P Indices for the review periods prescribed by the Plan's IPS.

Unlike in *Meiners* and *Davis*, where the plaintiffs alleged underperformance against a single alternative investment in entirely different categories as the challenged investments, the S&P Indices are the recognized, leading benchmark

42

for the BlackRock TDFs' very assets class.  ER_50 ¶ 47.  Moreover, the Complaint

replicates the performance review the Committee should have conducted per the

Plan's own IPS.  Such allegations are sufficient to "permit the reasonable inference

that the S&P benchmark would allow a jury to assess appropriately the Funds'

performance and the prudence of the process that led to their retention."  *Parker-*

*Hannifin*, 122 F.4th at 218.

      Courts around the country have accepted allegations that a benchmark is apt

where it is published by a leading investment research provider and includes

investments that "fall within the same universe" and "incorporate similar

purposes" as the challenged investments.  *See Snyder v. UnitedHealth Grp., Inc.*,

2021 WL 5745852, at *4 (D. Minn. Dec. 2, 2021) (finding Morningstar

comparators constitute meaningful benchmarks); *see also Dover v. Yanfeng US*

*Auto. Interior Sys. I LLC*, 563 F. Supp. 3d 678, 688 (E.D. Mich. 2021)

(recognizing parties in ERISA actions "routinely reference" Morningstar indexes

or expert testimony that cites to these indexes).  Multiple circuit courts have now

additionally held that "market indices are appropriate meaningful points of

comparison for passive funds."  *Parker-Hannifin*, 122 F.4th at 218 (citing *Braden*,

588 F.3d at 595–96).  Moreover, the Complaint alleges the underperformance of

the BlackRock TDFs against the S&P Indices *in addition* to peer TDFs and the

Dynamic TDFs, which courts have found bolsters the use of the S&P Indices in

supporting an inference that fiduciaries imprudently retained TDF investments. *See Kistler*, 2024 WL 3292543, at \*10 ("[W]hen presented in combination with their allegations regarding peer TDFs, the S&P Target Date Indices assist the plaintiffs in plausibly showing that their peer TDF performance comparisons are not cherry picked."). In short, these allegations amount to a "meaningful comparison" between the BlackRock TDFs and the S&P Indices, which in turn "support reasonable inferences about the imprudence of [Cisco's] administrative process." *Parker-Hannifin*, 122 F.4th at 219.

Second, with respect to the peer investment alternatives, the Complaint provides numerous independent grounds to support its performance comparisons to the Comparator TDFs. ER_53–59 ¶¶ 51–63. Indeed, courts reviewing similar allegations have found them sufficient to satisfy any existing "burden at the pleading stage to provide a sound basis for comparison." *Jones*, 2023 WL 7458377, at \*10; *see also Kistler*, 2024 WL 3292543, at \*9 (similar).

Even if the Court finds it is appropriate to evaluate the aptness of comparators at this stage, Appellants allege facts establishing the suitability of their comparators, including based on their goals, glide path structures, and risk profiles. ER_53–59 ¶¶ 51–63. Tellingly, the BlackRock TDFs were incapable of outperforming the Comparator TDFs at all stages along the glide path. ER_63–83 ¶¶ 69–78. The Complaint also alleges why it is both necessary as well as

44

consistent with prevailing standards and the Plan's IPS to evaluate the BlackRock TDFs against peers. ER_43–48 ¶¶ 37–43, ER_53 ¶ 52; *see also Jones*, 2023 WL 7458377, at *8 ("[R]eading the Amended Complaint . . . in the light most favorable to the Plaintiff[], the Court construes Plaintiff's allegations relating to the [] "peer TDFs" as encompassing the same or substantially similar funds as those that the IPS directs the Committee to review[.]"); *see Trauernicht*, 2023 WL 5961651, at *13 (crediting allegations that comparator TDFs were consistent with the IPS and finding comparisons appropriate "because Plaintiffs do explain why the Comparator TDFs were selected"); *Kistler*, 2024 WL 3292543, at *9–*10 (finding allegations of underperformance compared to peer TDFs are appropriate where supported by plan documents and factual allegations).

Third, the Complaint compares the BlackRock TDFs to the Dynamic TDFs. ER_52–54 ¶¶ 50–53. The Dynamic TDFs are managed by the same firm and have the same glide path and strategy as the BlackRock TDFs. *Id.* The Dynamic TDFs, however, employ a layer of tactical asset allocation that BlackRock stated would "create vastly better retirement outcomes" while "adding no or little additional risk over time." *Id.* In fact, the Dynamic TDFs were specifically expected to outperform the BlackRock TDFs by 50 to 100 basis points annually—and they did. ER_53 ¶ 51.

The Committee neither investigated the Dynamic TDFs nor discussed whether the existence of a product with the very same glide path and strategy, yet a manager-stated expectation of outperforming the BlackRock TDFs, would merit a review of the BlackRock TDFs in the Plan.  ER_53 ¶ 52.  The DOL has made clear that it is presumptively imprudent to retain an investment with a lower expected return than other investments with comparable risk.  *Id.*; *see also* 80 Fed. Reg. 65135, 65137 (Oct. 26, 2015) ("[A]n investment will not be prudent if it would be expected to provide a plan with a lower rate of return than available alternative investments[.]").  Moreover, the shared characteristics between the BlackRock TDFs and the Dynamic TDFs (*i.e.*, same management firm, nearly identical glidepaths, and a degree of active management inherent in all TDFs) have been found to render plausible allegations of underperformance premised on a comparison between two suites of TDFs.  *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *8.  Thus, it was error for the District Court to reject allegations that the known expectation of outperformance of the Dynamic TDFs should have caused prudent fiduciaries to investigate the ongoing suitability of the BlackRock TDFs.

Courts that have applied implicit benchmark requirements have found such requirements to be met at the pleadings stage where plaintiffs have provided comparator funds in the same category that use the same market index as the funds

46

at issue. *See Moler v. Univ. of Md. Med. Sys.*, 2022 WL 2756290, at *4 (D. Md. July 13, 2022); *see also Bouvy*, 2020 WL 3448385, at *9 (finding plausible inference of imprudence where plaintiff "allege[d] facts regarding a fee differential as well as specific examples of funds that underperformed their peers."); *Waldner v. Natixis Inv. Managers, L.P.*, 2021 WL 9038411, at *1, *3–*5 (D. Mass. Dec. 20, 2021) (denying motion to dismiss where plaintiffs alleged challenged investments underperformed compared to benchmarks and peer investments).

By rejecting Appellants' allegations supporting the comparisons, the District Court engaged in impermissible factfinding. Even if ERISA does require plaintiffs to allege meaningful benchmarks (it does not), the District Court's misapplication of Rule 8's pleading standard on its own compels reversal.

## II. THE DISTRICT COURT ERRED BY APPLYING AN INAPPROPRIATE BENCHMARK REQUIREMENT

### A. Application of a dispositive benchmark requirement at the pleadings stage abrogates ERISA's duty of prudence

ERISA's duty of prudence turns on the context of fiduciary conduct. Like the presumptions rejected by the Supreme Court in *Dudenhoeffer* and *Hughes*, application of a benchmark requirement at the pleadings stage is at odds with the standard of care under ERISA's duty of prudence. *See id.*

Nothing in ERISA suggests that a plaintiff must identify specific benchmarks in order to state a claim. Accordingly, "a meaningful benchmark is

not required to plead a facially plausible claim of imprudence." *Parker-Hannifan*, 122 F.4th at 216. To the contrary, as this Court has held, there are a "myriad of circumstances that could violate the [prudence] standard." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008). This is because ERISA's "prudence requirement is a flexible standard." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008). Thus, "evaluating the prudence of an investment decision requires a totality of-the-circumstances inquiry." *Tatum v. RJR Pen. Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014).

Even the Eighth Circuit in *Meiners* and *Davis* did not purport to alter the holistic plausibility standard when it introduced a benchmark requirement for theories of breach based solely on excessive costs or underperformance. *See Meiners*, 898 F.3d at 822 ("To show that 'a prudent fiduciary in like circumstances' would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark."). Unlike here, the plaintiffs in *Meiners* and *Davis* pled no indicia of imprudence other than underperformance, leaving the court to determine whether underperformance alone was sufficient to support an inference of fiduciary breach. Also unlike here, the benchmark to which the *Meiners* and *Davis* plaintiffs compared the challenged investments were not even facially plausible.

48

In *Meiners*, the plaintiff "only pled that one Vanguard fund . . . performed better than the Wells Fargo TDFs" at issue and did not allege any basis for the single investment comparator he offered. 898 F.3d at 823. The court found this single allegation was insufficient in the absence of other allegations to support the comparison or a plausible inference of imprudence. *See id.* at 824. It bears noting that the court in *Meiners* recognized the district court made certain improper factual findings, but excused these findings in recognition of "a potential pattern of plaintiffs trying to convert failure to invest in Vanguard [which are known to be low cost investments], without more, into a breach of fiduciary duty." *Id.* at 823 n.4 (citing *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006)).

Two years after *Meiners*, the Eighth Circuit reviewed another case in which the plaintiffs challenged investments on the basis of underperformance alone (or, with respect to one investment, excessive fees alone). *See Davis*, 960 F.3d at 482–487. The plaintiffs in *Davis* challenged three investments in Washington University's plan: First, the plaintiffs challenged an investment consisting of direct real estate ownership interests by way of comparison to an index of publicly-traded real estate investment trust stocks. *See id.* at 484. Second, the plaintiffs challenged a variable annuity product, an asset designed to provide lifetime income, by comparison to an equity mutual fund (with no lifetime income

49

component) composed of a substantially different portfolio of underlying securities. *See id.* at 485. Third, the plaintiffs challenged a traditional annuity without providing a comparison to any benchmark or alternative investment whatsoever. *See id.* at 486. Instead, the plaintiffs suggested a surrender charge associated with the investment rendered retention of the investment imprudent, but the complaint lacked allegations supporting the suggestion that the surrender charge was unreasonable or that other investments were available on better terms. *See id.* Each of these allegations involved narrow comparisons to a single investment alternative in an entirely different asset class—or no comparisons or allegations suggesting unreasonable conduct at all. Applying its *Meiners* holding to this analogous insufficiently supported pleading, the Eighth Circuit reaffirmed that "a bare allegation that costs are too high, or returns are too low," cannot support an inference of imprudence without "a sound basis for comparison—a meaningful benchmark." *Id.* at 484. However, the court also reaffirmed that "there is no one-size-fits-all approach" and "[p]lausibility depends on the totality of the specific allegations in each case." *Id.*

Far different than *Meiners* or its progeny, the Complaint alleges the underperformance of the BlackRock TDFs based on multiple relevant touchstones. *See supra* Statement of the Case.I.B.3. Moreover, the allegations concerning underperformance are rendered even more plausible based on the Plan's IPS. *See*

50

*California Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1042 (9th Cir. 2001) ("Fiduciaries who are responsible for plan investments governed by ERISA must comply with the plan's written statements of investment policy . . . ."). The District Court's benchmark requirement cannot be sustained.

### B.    The benchmark requirement is inconsistent with the applicable context-specific inquiry

The benchmark requirement embraced by the District Court does not sync with the plausibility analysis applicable at each level of the pleading inquiry. It was error for the District Court to effectively require that a plaintiff must establish (not plead) that a benchmark is "meaningful" to survive a 12(b)(6) motion. Putting aside the issue of whether a district court is equipped to determine this fact-intensive question on the pleadings (*see infra* Argument.II.D), the standard forecloses the "context-specific" plausibility inquiry required under *Dudenhoeffer* and *Hughes*. Of course, a court's assessment of whether these claims are plausible may consider the benchmark comparisons pled as part of the holistic plausibility determination. But, a court must credit allegations supporting the benchmarks and then review the underperformance or excessive cost allegations among the complaint's "allegations as a whole." *Hughes*, 595 U.S. at 177.

Some benchmarks may have more relevance in a holistic plausibility determination than others, but that does not necessarily deprive "lesser" benchmarks of all relevance. *See Mator*, 102 F.4th at 188 ("[T]he Mators'

comparisons between the Plan and other plans, while not perfect, are sufficient to plausibly state a claim for breach of fiduciary duty.").  Since the dispositive benchmark requirement imposed by the District Court ignores the totality of circumstances, however, it eviscerates the determination of holistic plausibility. *See id*.

Appellants allege underperformance against *six* relevant benchmarks demonstrating the BlackRock TDFs quantitative deficiencies: the S&P Indices, the four Comparator TDFs, and the Dynamic TDFs.  *See supra* Statement of the Case.I.B.3.  Even if the S&P Indices or peer TDFs that Appellants proffer were imperfect comparators, the BlackRock TDFs' consistent relative underperformance compared to ***all of them*** still provides factual support that Cisco's monitoring process was insufficient.  *Cf. Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans,* 2022 WL 17224708, at *4 (C.D. Cal. Sept. 27, 2022) ("Defendant argues that a comparison with passively managed funds is inapposite; but the point of the comparison is that Defendants should have used lower cost, passively managed funds").  The all-or-nothing benchmark requirement employed by the District Court led it to disregard and discount allegation after allegation supporting an inference that retention of the BlackRock TDFs was imprudent.

52

C.    **The District Court's application of the benchmark requirement would immunize fiduciaries**

Besides narrow exceptions like the share class claims in *Tibble*,[12] the benchmark requirement adopted by the District Court would "make[] it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious." *Dudenhoeffer*, 573 U.S. at 425. Different investments in the same category (*e.g.*, large cap funds, mid-cap funds, bond funds, TDFs) necessarily have, to some degree, their own styles and strategies—otherwise, investment products would be indistinguishable and offerings would have the same returns. Consequently, the District Court's benchmark requirement effectively shields most, if not all, investment products from comparison unless on the basis of share class.

The benchmark requirement embraced by the District Court does not fit into the applicable plausibility standard. By discounting Appellants' allegations supporting the comparators, the District Court effectively espoused a standard requiring plaintiffs to *establish* (not plead) that a benchmark is "meaningful" in order to survive a 12(b)(6) motion. *See Parker-Hannifin*, 122 F.4th at 218 n.4. ("The dissent's lengthy exposition of the showing [plaintiff] would have to make

---

[12]In *Tibble*, the plaintiffs alleged that the fiduciaries "acted imprudently by offering six higher priced retail-class mutual funds as [p]lan investments when materially identical lower priced institutional-class mutual funds were available." 575 U.S. at 525–26. Many mutual funds offer different share classes, between which the only difference is cost. *See id.*

in order to prevail *at trial* (which *precedes* the dissent's discussion of the plausibility of the complaint's allegations) creates the mistaken impression that [Plaintiff]'s complaint has failed to carry a huge evidentiary burden—one that is inapplicable to the matter currently before us.").  Putting aside the issue of whether a district court is equipped to determine this fact-intensive question on the pleadings (*see infra* Argument.II.D), such a standard forecloses the required "context-specific" plausibility inquiry.  Of course, a court's assessment may consider the benchmark comparisons pled, but this inquiry should only be part of the holistic plausibility determination; it cannot subsume the entire evaluation. Moreover, courts must credit well-pled factual allegations supporting the use of the benchmarks pled and then review underperformance or excessive cost allegations among a complaint's "allegations as a whole." *Hughes*, 595 U.S. at 177.

Appellants allege underperformance against multiple relevant benchmarks demonstrating the BlackRock TDFs' quantitative deficiencies: the S&P Indices, peer TDFs supported by the Plan's IPS, and another suite offered by the same manager.  The S&P Indices, which represent "the opportunity set" of available TDFs and are the most widely-used TDF benchmark.  ER_50 ¶ 47.  The Comparator TDF suites are offered to the same market and each seeks to provide an "all-in-one solution" for investors with a given assumed retirement year. ER_38 ¶ 26.  The Dynamic TDFs are offered by the same investment manager,

follow the same glide path, and pursue the same strategy as the BlackRock TDFs. ER_52–54 ¶¶ 50–53.

Even if the comparators alleged were not perfectly identical to the BlackRock TDFs (a marketplace impossibility), the Committee's failure to take note of the BlackRock TDFs' consistent relative underperformance compared to **all of them** still provides factual support for the contention that Defendant's monitoring process was insufficient, particularly given the monitoring framework established under the Plan's IPS. *Cf. Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) ("[T]he fiduciary's responsibility" is "to screen investment alternatives and to ensure that imprudent options are not offered to plan participants").

The District Court should have considered the BlackRock TDFs' underperformance against the comparators in the Complaint as part of its holistic analysis. However, the benchmark requirement the District Court erroneously employed left no room for these (and other) relevant allegations.

### D.     The District Court's benchmark analysis was premature and constituted impermissible factfinding

Whether a plausible benchmark is actually "meaningful" is a fact-intensive issue that is the subject of much debate amongst industry experts. *See, e.g.*, *Sacerdote*, 9 F.4th at 120 ("The district court found after detailed analysis [at trial] . . . that the benchmarks used by the Committee to evaluate these two funds were

55

appropriate in light of these funds' unique and complex characteristics and that the retention of these funds was valuable in diversifying the plans."); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 34 (1st Cir. 2018) (finding argument that "comparators were not plausible" raises "questions of fact"); *Mills v. Molina Healthcare, Inc.*, 2024 WL 1216711, at *10 (C.D. Cal. Mar. 20, 2024) (relying on expert opinions to resolve questions concerning appropriate comparators); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 710 (W.D. Mo. 2019) (reaching factual determinations regarding appropriate benchmarks only after the presentation of evidence).

Factual disputes are not suitable for resolution on a motion to dismiss under Rule 12(b)(6). *See Miller v. Astellas US LLC*, 2021 WL 1387948, at *5 (N.D. Ill. Apr. 13, 2021) ("factual disputes regarding the aptness of the comparisons . . . are inquiries that are inappropriate to resolve at this [pleading] stage."); *see also Parker-Hannifin*, 122 F.4th at 216 ("It is for the jury to decide whether the Funds' failure to meet the S&P benchmark in fact meant that a prudent administrative process would have resulted in their replacement."); *Salesforce*, 2022 WL 1055557, at *2 (finding purported justification for investment choice is "a factual issue that cannot be resolved at the pleading stage"); *Mattson v. Milliman, Inc.*, 2022 WL 21596720 (W.D. Wash. Dec. 13, 2022) (declining to adopt the defendants' argument that funds were inapt comparators because there is "no

56

authority for the proposition that, in deciding [a] Rule 12(b)(6) motion, the [c]ourt may make the requested factual determinations."); *In re MedStar ERISA Litig.*, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021) ("benchmark" inquiry cannot be "properly resolved at the motion to dismiss stage"); *Short v. Brown Univ.*, 320 F. Supp. 3d 363, 372 (D.R.I. 2018) (similar). Instead, the focus of the analysis conducted by these courts is plausibility.

The District Court "engaged in impermissible fact-finding" by concluding that Appellants' comparators were not apt. *Wacker v. JP Morgan Chase & Co.*, 678 F. App'x 27, 30 (2d Cir. 2017). "While the District Court may well be proven correct at a later stage . . . assessing the choice of a benchmark at the pleading stage . . . involves an inherently fact-intensive inquiry into the relationship between the benchmark and the [fund] it allegedly tracks." *Id.*

## III. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CO-FIDUCIARY MONITORING CLAIM

Appellants also claim Cisco is liable for failing to monitor its co-fiduciaries under 29 U.S.C. § 1105(a). This section makes any fiduciary "liable for a breach of fiduciary responsibility of another fiduciary." 29 U.S.C. § 1105(a). Appellants allege Cisco's role in appointing the Committee and subsequent failure to monitor its appointees. ER_34 ¶¶ 11–12, ER_91–93 ¶¶ 107–116. Since the District Court found this claim is derivative of Appellants' principal breach of fiduciary duty claims, ER_28, and Appellants plausibly state their principal claims, *see infra*

Argument, I–II, dismissal of this claim is unwarranted.

## CONCLUSION

The Court should reverse the dismissal order.

Date: May 12, 2025

Respectfully submitted,

/s/ *James C. Shah*
JAMES C. SHAH
MILLER SHAH LLP
456 Montgomery Street
Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com

JAMES E. MILLER
LAURIE RUBINOW
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
(866) 540-5505
jemiller@millershah.com

ALEC J. BERIN
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
(866) 540-5505
ajberin@millershah.com

*Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** No. 25-2131

I am the attorney or self-represented party.

This brief contains 12,975 words (including words that appear in charts or images)**,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ *James C. Shah*          **Date** May 12, 2025

I